## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **RICHOL GRINER,** | ) | |
| | ) | |
| Petitioner, | ) | Case No. 7:22CV00403 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **J. C. STREEVAL,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Respondent. | ) | |

*Richol Griner, Pro Se Petitioner; Justin Lugar, Assistant United States Attorney,* OFFICE OF THE UNITED STATES ATTORNEY, *Roanoke, Virginia, for Respondent.*

Richol Griner, a federal inmate proceeding pro se, filed this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241.[1]  After Griner received a criminal sentence as well as prison disciplinary penalties for the same conduct, he filed this petition asserting double jeopardy and due process claims.  After review of the record, I will grant the respondent's Motion to Dismiss.

### I. BACKGROUND.

In the winter of 2019, Griner was incarcerated at Federal Correctional Institution (FCI) Schuylkill in Pennsylvania, serving a federal criminal sentence in

---

[1]   The record indicates that when Griner filed his § 2241 petition, he was incarcerated at the United States Penitentiary Lee County, located within this judicial district.

the custody of the Federal Bureau of Prisons (BOP).  Under its statutory assignment
to administer the federal prison system, the BOP has promulgated rules for inmate
discipline, 28 C.F.R. § 541.1–.31.  This disciplinary program helps "ensure the
safety, security, and orderly operation of correctional facilities, and the protection of
the public, by allowing Bureau staff to impose sanctions on inmates who commit
prohibited acts."  *Id.* § 541.1.

When BOP staff members reasonably believe an inmate has violated a BOP
regulation, a staff member will prepare an Incident Report "describing the incident
and the prohibited act(s) [the inmate is] charged with committing."  *Id.* § 541.5(a).
Staff will "ordinarily" provide the inmate with a copy of the incident report (IR)
within twenty-four hours of the time when staff became aware of the inmate's
involvement in the incident.  *Id.*  After the inmate receives his copy of the IR, a staff
member will investigate the incident and charges.  As part of that process, the
investigator will notify the inmate of the charges, explain his due process rights
related to the disciplinary proceedings, and begin gathering information, including
the inmate's statement.  "[T]he staff investigation of the incident report may be
suspended before requesting [the inmate's] statement if it is being investigated for
possible criminal prosecution."  *Id.* § 541.5(b)(2).

After the staff investigation, a Unit Disciplinary Committee (UDC) reviews
the case.  When the charged offense is serious and may subject the inmate to more

than minor sanctions, the UDC refers the case to the Disciplinary Hearing Officer (DHO). *Id*. § 541.7(a)(4).

The DHO conducts a hearing and then considers the evidence presented. The DHO may rule that the inmate committed the prohibited act as charged or that he did not, or the DHO may refer the case for further investigation. Ultimately, the DHO prepares a record of the proceedings that documents when and how the inmate was notified of his rights, states the DHO's findings and decision, and designates the evidence on which the DHO relied. The DHO Report must also state the reasons for the sanctions imposed.

On March 4, 2019, FCI Schuylkill staff member J. Wynne prepared Incident Report 3229995 charging Griner with Possession of Narcotics in violation of BOP disciplinary code 113 and Possession of Non-Hazardous Contraband in violation of BOP disciplinary code 331. According to the DHO Report, on March 4, 2019, staff learned of an incident that occurred on the afternoon of March 1, 2019, when Griner made several unsuccessful attempts to walk through a metal detector. An officer then conducted a visual search and recovered five separate sealed packages concealed on Griner's body. Testing indicated that two of these packets contained tobacco, one contained marijuana, and one contained forty-nine smaller packets of suboxone.

Given the nature of the allegations in Incident Report 3229995, BOP staff referred the matter to the United States Attorney for the Middle District of Pennsylvania for investigation and possible prosecution.  A grand jury returned an Indictment charging Griner with three counts of Possession of Contraband, *United States v. Griner*, No. 3:19CR00336 (M.D. Pa.).  Griner pleaded guilty under a Plea Agreement to Count One (for possessing suboxone).  The court sentenced him on March 4, 2021, to eighteen months in prison, consecutive to his other sentence.

After the conclusion of the federal criminal case arising from Incident Report 3229995, BOP staff provided Griner with a copy of the Report on June 22, 2021, and proceeded with normal disciplinary proceedings under BOP procedures.  The DHO conducted a hearing in July 2021 and concluded that the greater weight of the evidence supported the finding that Griner committed the prohibited acts of possessing marijuana and suboxone (BOP Code 113) and possessing tobacco (BOP Code 331).  Griner did not challenge the finding that he committed these acts.  The DHO sanctioned Griner to loss of forty-one days of Good Conduct Time (GCT); forfeiture of 280 days of non-vested GCT; fourteen months without telephone privileges; nine months without commissary privileges; and fourteen months without visitation privileges, followed by fourteen months of non-contact visitation with immediate family only.  The DHO stated that these sanctions were imposed because the "[u]se of controlled substances in a correctional facility inherently

jeopardizes the security and good order of the institution," by encouraging more contraband and making inmate users more likely to suffer health risks and commit other misconduct.  Mem. Supp. Mot. Dismiss Ex. 1, Chambers Decl. Attach. C, at 3, ECF No. 5-4.  Griner's administrative appeals of the sanctions imposed were unsuccessful.

Liberally construed, Griner's § 2241 petition and other submissions appear to be claiming that the prison disciplinary sanctions fell afoul of protections against double jeopardy, were excessively harsh so as to be unconstitutional, and otherwise violated BOP policy in violation of due process.  As relief, he asks the court to order removal of the institutional sanctions.  The United States filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment, supported with the Declaration of DHO Brian Chambers and attached documentation, ECF No. 5-1.  Griner has responded to the motion, making it ripe for consideration.

## II. DISCUSSION.

As an initial matter, in Griner's response to the respondent's motion, he concedes that he has no viable double jeopardy claim, related to the disciplinary sanctions.  Reply Opp'n 1, ECF No. 7.  Therefore, I will grant the respondent's motion as to this claim.

Second, I find no merit to Griner's claim that the sanctions issued against him violate BOP policy.  To assess this claim, I have reviewed the applicable regulations

governing the BOP Inmate Discipline Program.  28 U.S.C. § 541.1, et seq.; BOP Program Statement 5270.09.  Section 541.8(g) of the Program Statement provides that if an inmate commits a prohibited act, a DHO can impose any available sanctions listed in Tables 1 and 2 of the Program Statement.  Prohibited Act 113, possession of marijuana or any narcotics not prescribed for the individual by the medical staff, is listed in Table 1 as a "Greatest Severity Level Prohibited Act[ ]." Chambers Decl. Attach. D. at 46, ECF No. 5-5.  The corresponding available sanctions for Greatest Severity Level Prohibited Acts include disallowance of 27– 41 days of GCT, forfeiture of up to 100% of non-vested GCT, and loss of privileges, including visiting, telephone, and commissary.  *Id.* at 46-47.  The sanctions imposed on Griner fall squarely within the permitted sanctions listed in Table 1 and thus did not violate BOP policy.

In response to the Motion to Dismiss, Griner also complains that officials violated BOP policy by failing to provide him promptly with a copy of the Incident Report.  The regulation Griner cites, Program Statement 5720.09 at section 541.5(a), states that an inmate will "ordinarily" receive a copy of the Report within twenty-four hours after staff learned of the incident.  *Id.* at 18.  Moreover, BOP procedures permit suspension of disciplinary proceedings where the charges are referred to an outside authority for criminal investigation and possible prosecution.  It is undisputed that Griner received a copy of the Incident Report weeks before the DHO

hearing.  Thus, he fails to show that the belated delivery of his copy of the Report violated BOP policy.  In any event, a violation of BOP policy or procedures does not state a federal due process violation.  *Hurley v. Streeval*, No. 7:20CV246, 2021 WL 1170088, at *3 (W.D. Va. Mar. 26, 2021).

Finally, Griner has no viable claim that his total punishment, combining the institutional sanctions and the criminal sentence for the same conduct, was excessive so as to violate his rights under the Eighth Amendment's prohibition of cruel and unusual punishments.  Punishment can be deemed cruel and unusual when it is disproportionate to the crime for which it is imposed.  *Graham v. Florida*, 560 U.S. 48, 59 (2010).  "'[N]o penalty is per se constitutional,' and even 'a single day in prison may be unconstitutional in some circumstances.'"  *United States v. Cobler*, 748 F.3d 570, 579 (4th Cir. 2014) (citation omitted).  Faced with a claim like Griner's that his sentence is excessive, a reviewing court "must determine that a 'threshold comparison' of the gravity of the offense and the severity of the sentence 'leads to an inference of gross disproportionality.'"  *Id.* at 575 (citations omitted).  Only upon concluding that these facts support an inference of gross disproportionality is the court "required to compare the defendant's sentence: (1) to sentences for other offenses in the same jurisdiction; and (2) to sentences for similar offenses in other jurisdictions."  *Id.*  If these comparisons "validate[ ] the threshold determination that the sentence is grossly disproportionate, the sentence is deemed 'cruel and unusual'

punishment under the Eighth Amendment." *Id.* (citation omitted).  "The Supreme Court has identified a term-of-years sentence as being grossly disproportionate on only one occasion." *Id.* (citing *Solem v. Helm*, 463 U.S. 277 (1983) (regarding sentence of life in prison for a recidivist whose final strike was for passing a bad check for $100).  "In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." *United States v. Rhodes*, 779 F.2d 1019, 1028 (4th Cir. 1985) (internal quotation marks and citation omitted).

Griner's criminal sentence of eighteen months added to the loss of good conduct time under BOP procedure simply cannot qualify under these standards as grossly disproportionate to his offense.  It is well established that drug use in prison is a serious security and health risk that warrants a sanction stiff enough to deter similar conduct in the future.  As discussed, the BOP sanctions fell within policy limits, and he does not offer facts showing any likelihood that knowledge of these sanctions would have influenced the sentencing court to impose a lesser prison term.  Griner also fails to state any facts on which he could compare the severity of his sentence to other sentences imposed for similar offenses.  For the stated reasons, I conclude that Griner has not demonstrated that the sanctions he challenged were excessive so as to constitutional cruel and unusual punishment.

## III.  CONCLUSION.

For the stated reasons, I will grant the respondent's motion and dismiss the

§ 2241 petition with prejudice.

A separate Final Order will be entered herewith.

DATED:   August 28, 2023

/s/  JAMES P. JONES
Senior United States District Judge